1

2

3

4

5

6

7

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

8

9

| | |
|---|---|
| WALTER A.T.,[1] | Case No. 1:24-cv-01513-EPG-HC |
| Petitioner, | FINDINGS AND RECOMMENDATION TO DENY RESPONDENT'S MOTION TO DISMISS AND GRANT PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| FACILITY ADMINISTRATOR, GOLDEN STATE ANNEX,[2] | (ECF No. 16) |
| Respondent. | ORDER DIRECTING CLERK OF COURT TO ASSIGN DISTRICT JUDGE AND SUBSTITUTE RESPONDENT |

16

17    Petitioner is a federal immigration detainee proceeding *pro se* with a petition for writ of

18    habeas corpus pursuant to 28 U.S.C. § 2241. For the reasons set forth herein, the undersigned

19    recommends that Respondent's motion to dismiss be denied, the petition for writ of habeas

20    corpus be granted, and Respondent be ordered to provide Petitioner with an individualized bond

21    hearing before an immigration judge at which the government must justify Petitioner's continued

22    detention by clear and convincing evidence.

---

[1] The Court partially redacts Petitioner's name to mitigate privacy concerns, as requested by Petitioner and suggested by the Committee on Court Administration and Case Management of the Judicial Conference of the United States. See Memorandum Re: Privacy Concern Regarding Social Security & Immigration Opinions (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

[2] "[L]ongstanding practice confirms that in habeas challenges to present physical confinement—'core challenges'—the default rule is that the proper respondent is the warden of the facility where the prisoner is being held . . . ." Rumsfeld v. Padilla, 542 U.S. 426, 435 (2004). The Ninth Circuit has "affirm[ed] the application of the immediate custodian and district of confinement rules to core habeas petitions filed pursuant to 28 U.S.C. § 2241, including those filed by immigrant detainees." Doe v. Garland, 109 F.4th 1188, 1199 (9th Cir. 2024). Thus, the proper respondent is Petitioner's immediate custodian, the Facility Administrator at the Golden State Annex. (ECF No. 16 at 1 n.1.)

# I.

## BACKGROUND

Petitioner is a native of Guatemala. (ECF No. 16 at 2; ECF No. 16-1 at 7, 12.[3]) In 2012 and in 2017, Petitioner was removed from the United States to Guatemala. (ECF No. 16 at 2; ECF No. 16-1 at 3.) Most recently, on February 2, 2024, the Department of Homeland Security ("DHS") detained Petitioner and began administratively processing him for expedited removal after Petitioner entered the United States without inspection, admission, or parole. (ECF No. 16 at 2; ECF No. 16-1 at 3, 19.) On April 23, 2024, DHS transferred Petitioner from expedited removal proceedings to full removal proceedings, charging Petitioner with removability under sections 212(a)(7)(A)(i)(I) and 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA") as an alien without valid entry documents and present in the United States without admission or parole. (ECF N. 16-1 at 3, 29.) On October 22, 2024, an immigration judge ("IJ") denied Petitioner's applications for relief from removal and ordered Petitioner removed. (ECF No. 1 at 2; ECF No. 16-1 at 4, 40–43.) Petitioner appealed the decision to the Board of Immigration Appeals ("BIA"), and that appeal is pending. (ECF No. 1 at 2; ECF No. 16-1 at 5.)

Meanwhile, on April 3, 2024, DHS's Enforcement and Removal Operations ("ERO") Bakersfield sub-office's Detained Unit denied Petitioner's first request for release on parole, finding that Petitioner had "not established to ICE [Immigration and Customs Enforcement]'s satisfaction that you are not a danger to the community or U.S. security." (ECF No. 16-1 at 27.) On or about July 10, 2024, Petitioner filed his second request for release on parole, which was denied. On or about August 1, 2024, Petitioner filed his third request for release on parole, which was denied.[4] (ECF No. 16-1 at 11.)

On or about August 6, 2024, Petitioner requested a custody redetermination hearing with an IJ. (ECF No. 16-1 at 11.) On August 22, 2024, an IJ held a hearing and concluded that the immigration court "lacked jurisdiction to consider [Petitioner]'s request for custody redetermination" and "lack[ed] jurisdiction to issue a bond." (Id. at 36, 37.) Thus, the IJ did not

---

[3] Page numbers refer to ECF page numbers stamped at the top of the page.
[4] Respondent does not provide documentation regarding, nor the basis for, the denials of Petitioner's second and third requests for release on parole.

1  make any determination as to Petitioner's flight risk or dangerousness. Petitioner appealed the

2  custody redetermination decision to the BIA, which affirmed, without opinion, the decision

3  below. (ECF No. 16-1 at 50.)

4         On November 27, 2024, Petitioner filed the instant petition for writ of habeas corpus,

5  asserting that his prolonged detention without a hearing on danger and flight risk violates the

6  Due Process Clause of the Fifth Amendment. (ECF No. 1 at 2.) On March 12, 2025, Respondent

7  filed a motion to dismiss and response to the petition. (ECF No. 16.) On April 14, 2025,

8  Petitioner filed a letter, (ECF No. 17), but to date, no opposition to the motion to dismiss has

9  been filed, and the time for doing so has passed.

10                                          **II.**

11                                      **DISCUSSION**

12     **A.  Motion to Dismiss**

13         Respondent contends that "Petitioner's mandatory detention continues to serve legitimate

14  congressionally mandated goals with a definite end in sight." (ECF No 16 at 6.) As Petitioner's

15  mandatory detention "is not punitive," "is not extraordinary," and "does not violate procedural

16  due process," Respondent moves to dismiss the petition. (ECF No 16 at 6.)

17         Congress has enacted a complex statutory scheme governing the detention of noncitizens

18  during removal proceedings and following the issuance of a final order of removal. "Where an

19  alien falls within this statutory scheme can affect whether his detention is mandatory or

20  discretionary, as well as the kind of review process available to him if he wishes to contest the

21  necessity of his detention." Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008).

22         Here, Respondent asserts that Petitioner is subject to mandatory detention pursuant to 8

23  U.S.C. § 1225(b).[5] The Supreme Court has described 8 U.S.C. § 1225 as follows:

24                Under § 302, 110 Stat. 3009–579, 8 U.S.C. § 1225, an alien who
                  "arrives in the United States," or "is present" in this country but
25                "has not been admitted," is treated as "an applicant for admission."
                  § 1225(a)(1). Applicants for admission must "be inspected by
26

27  _____
    [5] "The Attorney General [has] interpreted 8 U.S.C. § 1225(b)(1)(B)(ii) to require mandatory detention without bond
    hearings for asylum seekers who were initially subject to expedited removal but later transferred to full removal
    proceedings after establishing a credible fear." Padilla v. U.S. Immigr. & Customs Enf't, 704 F. Supp. 3d 1163,
28  1168 (W.D. Wash. 2023) (citing Matter of M-S-, 27 I. & N. Dec. 509, 515–17 (2019)).

1

2    immigration officers" to ensure that they may be admitted into the country consistent with U.S. immigration law. § 1225(a)(3).

3    As relevant here, applicants for admission fall into one of two categories, those covered by § 1225(b)(1) and those covered by

4    § 1225(b)(2). Section 1225(b)(1) applies to aliens initially determined to be inadmissible due to fraud, misrepresentation, or

5    lack of valid documentation. See § 1225(b)(1)(A)(i) (citing §§ 1182(a)(6)(C), (a)(7)). Section 1225(b)(1) also applies to certain

6    other aliens designated by the Attorney General in his discretion. See § 1225(b)(1)(A)(iii). Section 1225(b)(2) is broader. It serves as

7    a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1) (with specific exceptions not relevant here). See §§ 1225(b)(2)(A), (B).

8

9    Both § 1225(b)(1) and § 1225(b)(2) authorize the detention of certain aliens. Aliens covered by § 1225(b)(1) are normally

10    ordered removed "without further hearing or review" pursuant to an expedited removal process. § 1225(b)(1)(A)(i). But if a

11    § 1225(b)(1) alien "indicates either an intention to apply for asylum ... or a fear of persecution," then that alien is referred for an

12    asylum interview. § 1225(b)(1)(A)(ii). If an immigration officer determines after that interview that the alien has a credible fear of

13    persecution, "the alien shall be detained for further consideration of the application for asylum." § 1225(b)(1)(B)(ii). Aliens who are

14    instead covered by § 1225(b)(2) are detained pursuant to a different process. Those aliens "shall be detained for a [removal]

15    proceeding" if an immigration officer "determines that [they are] not clearly and beyond a doubt entitled to be admitted" into the country. § 1225(b)(2)(A).

16

17    Regardless of which of those two sections authorizes their detention, applicants for admission may be temporarily released on

18    parole "for urgent humanitarian reasons or significant public benefit." § 1182(d)(5)(A); see also 8 C.F.R §§ 212.5(b), 235.3

19    (2017). Such parole, however, "shall not be regarded as an admission of the alien." 8 U.S.C. § 1182(d)(5)(A). Instead, when

20    the purpose of the parole has been served, "the alien shall forthwith return or be returned to the custody from which he was paroled and

21    thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." *Ibid.*

22

23    Jennings v. Rodriguez, 583 U.S. 281, 287–88 (2018).

24    In Zadvydas v. Davis, 533 U.S. 678 (2001), the Supreme Court addressed a challenge to

25    prolonged detention under § 1231(a)(6) by noncitizens who "had been ordered removed by the

26    government and all administrative and judicial review was exhausted, but their removal could

27    not be effectuated because their designated countries either refused to accept them or the United

28    States lacked a repatriation treaty with the receiving country." Prieto–Romero, 534 F.3d at 1062

1  (citing Zadvydas, 533 U.S. at 684–86). The Supreme Court held that § 1231(a)(6) does not

2  authorize indefinite detention and "limits an alien's post-removal-period detention to a period

3  reasonably necessary to bring about that alien's removal from the United States." Zadvydas, 533

4  U.S. at 689. Thus, after a presumptively reasonable detention period of six months, a noncitizen

5  was entitled to release if "it has been determined that there is no significant likelihood of removal

6  in the reasonably foreseeable future." Id. at 701.

7      In Demore v. Kim, 538 U.S. 510 (2003), the Supreme Court rejected a facial challenge to

8  mandatory detention under 8 U.S.C. § 1226(c). The Supreme Court upheld its "longstanding

9  view that the Government may constitutionally detain deportable aliens during the limited period

10  necessary for their removal proceedings." Id. at 526. The Supreme Court distinguished Zadvydas

11  by emphasizing that mandatory detention under § 1226(c) has "a definite termination point" and

12  "in the majority of cases it lasts for less than the 90 days . . . considered presumptively valid in

13  Zadvydas." Id. at 529. However, Justice Kennedy specifically noted that "a lawful permanent

14  resident alien such as respondent could be entitled to an individualized determination as to his

15  risk of flight and dangerousness if the continued detention became unreasonable or unjustified."

16  Demore, 538 U.S. at 532 (Kennedy, J., concurring).

17      "In a series of decisions, the [Ninth Circuit] . . . grappled in piece-meal fashion with

18  whether the various immigration detention statutes may authorize indefinite or prolonged

19  detention of detainees and, if so, may do so without providing a bond hearing." Rodriguez v.

20  Hayes (Rodriguez I), 591 F.3d 1105, 1114 (9th Cir. 2010). This culminated in Rodriguez v.

21  Robbins (Rodriguez III), 804 F.3d 1060 (9th Cir. 2015), in which the Ninth Circuit held that for

22  noncitizens detained under 8 U.S.C. §§ 1225(b), 1226(a), and 1226(c), "the government must

23  provide periodic bond hearings every six months so that noncitizens may challenge their

24  continued detention as 'the period of . . . confinement grows.'" 804 F.3d at 1089 (quoting Diouf

25  v. Napolitano (Diouf II), 634 F.3d 1081, 1091 (9th Cir. 2011)). Importantly, the Ninth Circuit

26  applied the canon of constitutional avoidance to interpret these immigration detention provisions

27  as providing a *statutory* right to a bond hearing once detention become prolonged. See Rodriguez

28  Diaz v. Garland, 53 F.4th 1189, 1195 (9th Cir. 2022).

1    In Jennings v. Rodriguez, the Supreme Court found the Ninth Circuit's interpretation that

2    § 1226(c) included "an implicit 6–month time limit on the length of mandatory detention" fell

3    "far short of a 'plausible statutory construction,'" and held that the Ninth Circuit misapplied the

4    constitutional avoidance canon to find a statutory right under 8 U.S.C. § 1226(a) to "periodic

5    bond hearings every six months in which the Attorney General must prove by clear and

6    convincing evidence that the alien's continued detention is necessary." Jennings, 583 U.S. at

7    304, 296, 306. The case was remanded to the Ninth Circuit "to consider [the] constitutional

8    arguments on their merits." Id. at 312. The Ninth Circuit likewise remanded the case to the

9    district court to consider the constitutional arguments in the first instance but observed that it had

10   "grave doubts that any statute that allows for arbitrary prolonged detention without any process

11   is constitutional or that those who founded our democracy precisely to protect against the

12   arbitrary deprivation of liberty would have thought so." Rodriguez v. Marin, 909 F.3d 252, 255,

13   256 (9th Cir. 2018).

14   There has been a dearth of guidance regarding the point at which an immigration

15   detainee's continued mandatory detention becomes unconstitutional. See Rodriguez Diaz, 53

16   F.4th at 1203 (noting that both the Ninth Circuit "and the Supreme Court have repeatedly

17   declined to decide constitutional challenges to bond hearing procedures in the immigration

18   detention context"). The Ninth Circuit has yet to take a position on whether due process requires

19   a bond hearing for noncitizens detained under 8 U.S.C. § 1225(b), but it has recognized that

20   "district courts throughout this circuit have ordered immigration courts to conduct bond hearings

21   for noncitizens held for prolonged periods under § 1226(c)" based on due process and noted that

22   "[a]ccording to one such court order, the 'prolonged mandatory detention pending removal

23   proceedings, without a bond hearing, will—at some point—violate the right to due process.'"

24   Martinez v. Clark, 36 F.4th 1219, 1223 (9th Cir. 2022) (citation omitted), vacated on other

25   grounds, 144 S. Ct. 1339 (2024).

26   Here, Respondent contends that Demore forecloses relief and warrants dismissal. The

27   Court notes that in upholding mandatory detention under 8 U.S.C. § 1226(c) in Demore, the

28   Supreme Court made repeated references to the "brief" and "limited" timeframe at issue. See

1   *Demore*, 538 U.S. at 513 ("brief period"); id. at 523 (("brief period"); id. at 526 ("limited

2   period"); id. at 529 n.12 ("[t]he very limited time of the detention at stake under § 1226(c)"); id.

3   at 531 ("limited period"). *Demore* specifically noted that "the detention at stake under § 1226(c)

4   lasts roughly a month and a half in the vast majority of cases in which it is invoked, and about

5   five months in the minority of cases in which the alien chooses to appeal," relying on statistics

6   from the Executive Office for Immigration Review ("EOIR"). 538 U.S. at 530. However,

7   "[t]hirteen years after the decision in *Demore*, the government admitted that the figures it

8   provided to the Court, and which the Court relied on, contained 'several significant errors,'" and

9   for the years 1999–2001, the "average length of detention in cases where the alien appealed

10  [was] 382 days, or a little more than a year." *Rodriguez v. Nielsen*, No. 18-CV-04187-TSH,

11  2019 WL 7491555, at *5 (N.D. Cal. Jan. 7, 2019) (citing Letter from Acting Solicitor General

12  Ian H. Gershengorn to Hon. Scott S. Harris (Aug. 26, 2016), at 2, 3, *Demore v. Kim*, 538 U.S.

13  510 (2003) (No. 01-1491)). "The data from the *Jennings* case show that 460 members of the

14  respondent section 1226(c) subclass were detained for an average of 427 days (over fourteen

15  months) with some individual detention periods exceeding four years." *Rodriguez*, 2019 WL

16  7491555, at *5 (citing Joint Appendix (Table 20) (Aug. 26, 2016), *Jennings v. Rodriguez*, 583

17  U.S. 281 (2018) (No. 15-1204)). The Government Accountability Office conducted a study and

18  "found that as of 2015, the median length of time it takes the BIA to complete an appeal of a

19  removal order exceeds 450 days." *Rodriguez*, 2019 WL 7491555, at *5 (citing United States

20  Government Accountability Office, Immigration Courts: Actions Needed to Reduce Case

21  Backlog and Address Long-Standing Management and Operational Challenges 33 (2017),

22  https://www.gao.gov/assets/690/685022.pdf).

23          As noted above, the Supreme Court rejected a *facial* challenge to mandatory detention

24  under 8 U.S.C. § 1226(c) in *Demore*. See *Demore*, 538 U.S. at 514 ("Respondent . . . filed a

25  habeas corpus action pursuant to 28 U.S.C. § 2241 . . . challenging the constitutionality of

26  § 1226(c) *itself*." (emphasis added)); *Black v. Decker*, 103 F.4th 133, 149 n.22 (2d Cir. 2024)

27  ("*Demore* ruled on a due process challenge to the facial constitutionality of section 1226(c)[.]").

28  In *Nielsen v. Preap*, 586 U.S. 392 (2019), the Supreme Court expressly preserved the right to

1    bring an as-applied challenge: "Our decision today on the meaning of that statutory provision

2    [§ 1226(c)] does not foreclose as-applied challenges—that is, constitutional challenges to

3    applications of the statute as we have now read it." Preap, 586 U.S. at 420. See Black, 103 F.4th

4    at 149 (Demore "said nothing about whether due process may *eventually* require a hearing. If

5    *Demore* had, in fact, foreclosed the due process challenge now before us, the *Jennings* Court

6    would have had no reason to remand to the Ninth Circuit 'to consider ... in the first instance' the

7    detainees' argument that '[a]bsent ... a bond-hearing requirement, ... [section 1226(c)] would

8    violate the Due Process Clause of the Fifth Amendment.'" (alterations in original) (quoting

9    Jennings, 583 U.S. at 291, 312)). Moreover, Demore does not directly address the issue

10   presented here: whether § 1225(b) as applied to Petitioner is unconstitutional.

11        Based on the foregoing, the Court finds that Demore does not necessarily preclude relief

12   or foreclose Petitioner's as-applied challenge. Therefore, dismissal based on Demore is not

13   warranted and the motion to dismiss should be denied.

14        **B.  Due Process Analysis**

15        Petitioner contends that "[d]etention without a bond hearing is unconstitutional when it

16   exceeds six months," and even absent a bright-line six-month standard, his "detention, without

17   *any* individualized review, is unreasonable under the *Mathews v. Eldridge* due process test" or

18   alternatively, "under the multi-factor reasonableness test the Third Circuit adopted in *German*

19   *Santos v. Warden Pike Correctional Facility*, 965 F.3d 203, 211 (3d Cir. 2020)." (ECF No. 1 at

20   9, 10.) Respondent notes that "the Ninth Circuit declined to adopt either a 6-month rule or a

21   periodic detention review rule in § 1226(c) cases" in Martinez v. Clark, 36 F.4th 1219, 1223 (9th

22   Cir. 2022), and argues that "multi-factor balancing to analyze Petitioner's §1225(b)(1)(B)(ii)

23   statutorily compelled detention . . . is unsupported by Supreme Court authority" and "barred

24   where, as here, Petitioner enjoyed repeated detention (parole and bond) review," citing to

25   Navarrete-Leiva v. Current or Acting U.S. Attorney General, No. 1:24-cv-00938-SKO (HC),

26   2024 WL 5111780 (E.D. Cal. Dec. 13, 2024). (ECF No. 16 at 4, 5.)

27        Courts in the Ninth circuit have taken a variety of approaches to determine whether due

28   process requires a bond hearing in a particular immigration detention case. See, e.g., Rodriguez

v. Nielsen, No. 18-cv-04187-TSH, 2019 WL 7491555, at *6 (N.D. Cal. Jan. 7, 2019) (applying bright-line rule that "detention becomes prolonged after six months and entitles [the petitioner] to a bond hearing" in § 1226(c) context); Banda v. McAleenan, 385 F. Supp. 3d 1099, 1117 (W.D. Wash. 2019) (considering six factors, which include: "(1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal" in § 1225(b) context); Juarez v. Wolf, No. C20-1660-RJB-MLP, 2021 WL 2323436, at *4 (W.D. Wash. May 5, 2021) (considering, in addition to six factors set forth above, "whether the detention will exceed the time the petitioner spent in prison for the crime that made him [or her] removable" and "the nature of the crimes the petitioner committed" in § 1226(c) context), report and recommendation adopted, 2021 WL 2322823 (W.D. Wash. June 7, 2021); Lopez v. Garland, 631 F. Supp. 3d 870, 879 (E.D. Cal. 2022) (considering "the total length of detention to date, the likely duration of future detention, and the delays in the removal proceedings caused by the petitioner and the government" in § 1226(c) context).

There are also some courts that apply the three-part test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976). See Zagal-Alcaraz v. ICE Field Off., No. 3:19-cv-01358-SB, 2020 WL 1862254, at *3–4 (D. Or. Mar. 25, 2020) (collecting cases), report and recommendation adopted, 2020 WL 1855189 (D. Or. Apr. 13, 2020). In Rodriguez Diaz, which concerned a noncitizen detained pursuant to 8 U.S.C. § 1226(a) and whether "continued detention was unconstitutional because under the Due Process Clause of the Fifth Amendment, he is entitled to a second bond hearing at which the government bears the burden of proof by clear and convincing evidence," the panel majority "assume[d] without deciding" that the Mathews test applied, noting that the Ninth Circuit has "regularly applied *Mathews* to due process challenges to removal proceedings," and finding "*Mathews* remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context." Rodriguez Diaz, 53 F.4th at 1193, 1206. Similarly, the dissent "agree[d] that the test developed in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), is the appropriate legal framework

1  to determine whether there was a due process violation." Rodriguez Diaz, 53 F.4th at 1219

2  (Wardlaw, J., dissenting). See also Black v. Decker, 103 F.4th 133, 147 (2d Cir. 2024)

3  ("conclud[ing] that due process challenges to prolonged detention under section 1226(c) should

4  also be reviewed under *Mathews*"); A.E. v. Andrews, No. 1:25-cv-00107-KES-SKO (HC), 2025

5  WL 1424382 (E.D. Cal. May 16, 2025) (applying Mathews test to determine whether due

6  process entitled petitioner to a bond hearing in § 1225(b) context).

7      Given that Petitioner applied the Mathews test in the petition, the Ninth Circuit has

8  "regularly applied *Mathews* to due process challenges to removal proceedings," Rodriguez Diaz,

9  53 F.4th at 1193, and Respondent does not suggest application of an alternative test, the Court

10  will apply the Mathews test in addition to addressing the bright-line rule.[6]

11      1.   Bright-Line Rule

12      The First, Second, and Third Circuits have "reject[ed] a bright-line constitutional rule

13  requiring a bond hearing after six months of detention—or after any fixed period of detention—

14  in the context of a Congressional mandate, in the immigration context, to detain." Black, 103

15  F.4th at 150 (citing Reid v. Donelan, 17 F.4th 1, 7–9 (1st Cir. 2021); German Santos v. Warden

16  Pike Cnty. Corr. Facility, 965 F.3d 203, 211 (3d Cir. 2020)). The Court finds such authority

17  persuasive and declines to adopt a bright-line rule that detention without a bond hearing is

18  presumptively unconstitutional when it exceeds six months.

19      2.   *Mathews* Test

20      In Mathews, the Supreme Court held that "identification of the specific dictates of due

21  process generally requires consideration of three distinct factors":

22          First, the private interest that will be affected by the official action;
           second, the risk of erroneous deprivation of such interest through

---

24  [6] Respondent argues that "multi-factor balancing is barred where, as here, Petitioner enjoyed repeated
25  detention (parole and bond) review," citing to Navarrete-Leiva v. Current or Acting U.S. Attorney
    General, No. 1:24-cv-00938-SKO (HC), 2024 WL 5111780 (E.D. Cal. Dec. 13, 2024). (ECF No. 16 at 5.)
26  "A decision of a federal district court judge is not binding precedent in either a different judicial district,
    the same judicial district, or even upon the same judge in a different case." Camreta v. Greene, 563 U.S.
    692, 709 n.7 (2011) (quoting 18 J. Moore et al., Moore's Federal Practice § 134.02[1] [d], p. 134–26 (3d
27  ed. 2011)). Navarrete-Leiva is not binding in this matter, and the Court notes that the judge in Navarrete-
    Leiva subsequently applied Mathews in a different case to determine that due process entitled a petitioner
28  detained under § 1225(b) to a bond hearing. A.E. v. Andrews, No. 1:25-cv-00107-KES-SKO (HC), 2025
    WL 1424382 (E.D. Cal. May 16, 2025).

the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.

*Mathews*, 424 U.S. at 334.

### a.  Private Interest

With respect to the first factor, the Court finds that the private interest at issue here is fundamental. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690. The Ninth Circuit has held that it "is beyond dispute" an immigration detainee's "private interest at issue here is 'fundamental': freedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause.'" Hernandez v. Sessions, 872 F.3d 976, 993 (9th Cir. 2017) (quoting Foucha v. Louisiana, 504 U.S. 71, 80 (1992)). See Rodriguez Diaz, 53 F.4th at 1207 ("We have also held, more generally, that an individual's private interest in 'freedom from prolonged detention' is 'unquestionably substantial.' . . . Rodriguez Diaz has a legitimate and reasonably strong private liberty interest under *Mathews.*" (quoting Singh, 638 F.3d at 1208)).

Accordingly, the first Mathews factor weighs in favor of Petitioner. The Court is cognizant that "it is important not to overstate the strength of [Petitioner]'s showing under the first *Mathews* factor," and that "under the first prong of the *Mathews* analysis, we cannot simply count his months of detention and leave it at that." Rodriguez Diaz, 53 F.4th at 1207, 1208. The Court acknowledges Petitioner's "private interests are further diminished by the fact that he is subject to an order of removal from the United States." Id. at 1208.

### b.  Risk of Erroneous Deprivation

With respect to the second factor, the Court considers the risk of erroneous deprivation of Petitioner's liberty interest and the probable value of additional procedural safeguards. "In evaluating the risk of erroneous deprivation in the context of noncitizen detention, the Ninth Circuit has looked to whether the detainee has a statutory right to procedural protections, such as individualized custody determinations and the right to seek additional bond hearings throughout

1  detention." Jensen v. Garland, No. 5:21-cv-01195-CAS (AFM), 2023 WL 3246522, at *6 (C.D.

2  Cal. May 3, 2023) (citing Rodriguez Diaz, 53 F.4th at 1209–10 (finding a small risk of erroneous

3  deprivation where petitioner was detained under § 1226(a) and thus received numerous

4  procedural protections, including individualized custody determinations and right to seek

5  additional bond hearings)).

6      Respondent asserts that "multi-factor balancing is barred where, as here, Petitioner

7  enjoyed repeated detention (parole and bond) review." (ECF No. 16 at 5.) Respondent notes that

8  "Petitioner was granted bond review and a formal custody redetermination hearing (*i.e.*, a bond

9  hearing) before an Immigration Judge," referencing an August[7] 22, 2024 hearing. (ECF No. 16 at

10 3.) Respondent's apparent suggestion that this hearing constitutes an individualized custody

11 determination is not well taken. The IJ found that the "Court lacks jurisdiction over [Petitioner]'s

12 custody redetermination request" and "lacks jurisdiction to issue a bond," and did not make any

13 determination regarding Petitioner's flight risk or dangerousness. (ECF 16-1 at 33, 37.)

14     Petitioner has had three parole reviews by DHS's Enforcement and Removal Operations

15 ("ERO") during his time in custody. (ECF No. 16 at 2; ECF No. 16-1 at 3–4). Although the

16 Supreme Court has rejected the Ninth Circuit's application of the constitutional avoidance canon

17 and its statutory interpretation of § 1225(b), the Court finds Rodriguez v. Robbins (Rodriguez

18 II), 715 F.3d 1127 (9th Cir. 2013), informative regarding the constitutional issues before this

19 Court. The Ninth Circuit "note[d] that the discretionary parole system available to § 1225(b)

20 detainees is not sufficient to overcome the constitutional concerns raised by prolonged

21 mandatory detention" because the "parole process is purely discretionary and its results are

22 unreviewable by IJs" and "release decisions are based on humanitarian considerations and the

23 public interest." Rodriguez II, 715 F.3d at 1144. See Padilla v. U.S. Immigr. & Customs Enf't,

24 704 F. Supp. 3d 1163, 1174 (W.D. Wash. 2023) (finding Plaintiffs "allege[d] a viable due

25 process claim" because "the parole process available to them under 8 U.S.C. § 1182(d)(5)(A) is

26 not a constitutionally adequate substitute for a bond hearing particularly since it does not test the

27

28 [7] The motion refers to an October 22, 2024 hearing and denial of bond, (ECF No. 16 at 3), but the exhibits
   cited by Respondent reflect that the hearing occurred on August 22, 2024. (ECF No. 16-1 at 33, 36.)

1  necessity of detention," "does not afford the noncitizen an in-person adversarial hearing before a

2  neutral decisionmaker where he or she may present witness testimony or evidence," does not

3  require "the ICE detention officer [to] make any factual findings or provide their reasoning, and

4  there is no apparent right to an administrative appeal").

5         Petitioner has been detained since February 2, 2024, (ECF No. 1 at 6; ECF No. 16-1 at 3),

6  a period of almost seventeen months, and has not received any bond hearing before a neutral

7  decisionmaker with authority to grant bond. Accordingly, the Court finds that the risk of

8  erroneous deprivation of Petitioner's liberty interest and the probable value of additional

9  procedural safeguards is high. See Jimenez v. Wolf, No. 19-cv-07996-NC, 2020 WL 510347, at

10  *3 (N.D. Cal. Jan. 30, 2020) ("[T]he risk of an erroneous deprivation of Landeros Jimenez's

11  liberty interest is high. He has not received any bond or custody redetermination hearing during

12  his one-year detention. Thus, the probable value of additional procedural safeguards—a bond

13  hearing—is high, because Respondents have provided virtually no procedural safeguards at

14  all."). Therefore, the second Mathews factor weighs in favor of Petitioner.

15         **c.  Government's Interest**

16         With respect to the third and final factor, the Court recognizes that "the government

17  clearly has a strong interest in preventing aliens from 'remain[ing] in the United States in

18  violation of our law'" and "has an obvious interest in 'protecting the public from dangerous

19  criminal aliens.'" Rodriguez Diaz, 53 F.4th at 1208 (quoting Demore, 538 U.S. at 518, 515). The

20  Ninth Circuit has stated that "[t]hese are interests of the highest order that only increase with the

21  passage of time," noting that "[t]he longer detention lasts and the longer the challenges to an IJ's

22  order of removal take, the more resources the government devotes to securing an alien's ultimate

23  removal" and "[t]he risk of a detainee absconding also inevitably escalates as the time for

24  removal becomes more imminent." Rodriguez Diaz, 53 F.4th at 1208.

25         However, it is important to stress that the "government interest at stake here is not the

26  continued detention of Petitioner, but the government's ability to detain him without a bond

27  hearing." Zagal-Alcaraz, 2020 WL 1862254, at *7. See Zerezghi v. U.S. Citizenship & Immigr.

28  Servs., 955 F.3d 802, 810 (9th Cir. 2020) (noting that "the question [under the third Mathews

1  factor] is *not* the government's interest in immigration enforcement" "in general" (emphasis

2  added)); Henriquez v. Garland, No. 5:22-cv-00869-EJD, 2022 WL 2132919, at *5 (N.D. Cal.

3  June 14, 2022) ("Although the Government has a strong interest in enforcing the immigration

4  laws and in ensuring that lawfully issued removal orders are promptly executed, the

5  Government's interest in detaining Petitioner without providing an individualized bond hearing

6  is low.").

7         Courts generally have found that the cost of providing a bond hearing is relatively

8  minimal, and there is nothing in the record before this Court demonstrating that providing

9  Petitioner with a bond hearing would be fiscally or administratively burdensome. See Marroquin

10  Ambriz v. Barr, 420 F. Supp. 3d 953, 964 (N.D. Cal. 2019) (noting in context of a § 1226(a)

11  detention, the parties did not contest "that the cost of conducting a bond hearing, to determine

12  whether the continued detention of Petitioner is justified, is minimal"); Singh v. Barr, 400 F.

13  Supp. 3d 1005, 1021 (S.D. Cal. 2019) (noting in the context of § 1226(a) detention that "[t]he

14  government has not offered any indication that a [ ] bond hearing would have outside effects on

15  its coffers"). Accordingly, the third Mathews factor weighs in favor of Petitioner.

16              **d.  Conclusion**

17         Based on the foregoing, the Court finds that each of the Mathews factors weighs in favor

18  of Petitioner, and therefore Petitioner is entitled to a bond hearing.

19       **C.  Remedy**

20         Petitioner requests that this Court "determine that Petitioner's detention is not justified

21  because the government has not established by clear and convincing evidence that Petitioner

22  presents a risk of flight or danger in light of available alternatives to detention, and order

23  Petitioner's release, with appropriate conditions of supervision if necessary, taking into account

24  Petitioner's ability to pay a bond." (ECF No. 1 at 2.) "Alternatively, Petitioner requests that the

25  Court issue a writ of habeas corpus and order Petitioner's release within 30 days unless

26  Respondents schedule a hearing before an IJ[.]" (Id.)

27         "The Court finds, consistent with other post-Jennings cases, that the appropriate remedy

28  is a bond hearing before an immigration judge[.]" Lopez, 631 F. Supp. 3d at 882. See Martinez

Leiva v. Becerra, No. 23-cv-02027-CRB, 2023 WL 3688097, at *9 (N.D. Cal. May 26, 2023)

("The Court further concludes that the appropriate remedy here is a bond hearing, and that an IJ,

not the Court, should conduct it[.]" (footnote omitted)); Mansoor v. Figueroa, No. 3:17-cv-

01695-GPC (NLS), 2018 WL 840253, at *4 (S.D. Cal. Feb. 13, 2018) ("The Court finds the IJ is

uniquely qualified and situated to make neutral administrative determinations about Petitioner's

eligibility for release on bond and/or placement in a supervised release program such as ISAP.").

The Court now turns to the burden of proof at the bond hearing and which party should

bear such burden. Petitioner argues that the government must bear the burden of proof by clear

and convincing evidence that Petitioner poses a danger or flight risk, citing to citing to Singh v.

Holder, 638 F.3d 1196, 1203 (9th Cir. 2011). (ECF No. 1 at 15.) Having "previously applied the

canon of constitutional avoidance to interpret . . . immigration provisions—8 U.S.C. §§ 1225(b),

1226(c), and 1231(a)(6)—as providing a statutory right to a bond hearing once detention

becomes prolonged," the Ninth Circuit in Singh "concluded that for these hearings to comply

with due process, the government had to bear the burden of proving by clear and convincing

evidence that the alien poses a flight risk or a danger to the community." Rodriguez Diaz, 53

F.4th at 1196 (citing Singh, 638 F.3d at 1203–05). Although Rodriguez Diaz may have declined

to impose the standard articulated in Singh, the panel majority specifically stated that it was not

"decid[ing] whether Singh remains good law in any respect following Jennings" and even

recognized that Singh was based "on general principles of procedural due process, reasoning that

a detained person's liberty interest is substantial." Rodriguez Diaz, 53 F.4th at 1202 n.4, 1199.

Additionally, the Ninth Circuit has suggested post-Jennings that Singh remains good law in

Martinez v. Clark, which took "no position" on "[w]hether due process requires a bond hearing

for aliens detained under § 1226(c)," but did address "the scope of federal court review of those

bond determinations" and found with respect to a bond hearing for a noncitizen detained under

§ 1226(c) that "the BIA properly noted that the government bore the burden to establish by clear

and convincing evidence that Martinez is a danger to the community." Martinez, 36 F.4th at

1223, 1231. On remand, and after Rodriguez Diaz was decided, the Martinez panel reconfirmed

"that the government bore the burden to establish by clear and convincing evidence that Martinez

1  is a danger to the community" and "that the BIA applied the correct burden of proof." <u>Martinez</u>
2  <u>v. Clark</u>, 124 F.4th 775, 785, 786 (9th Cir. 2024).

3      The undersigned recommends that the government must justify Petitioner's continued
4  confinement under § 1225(b) by clear and convincing evidence that Petitioner is a flight risk or a
5  danger to the community. <u>See</u> <u>A.E. v. Andrews</u>, No. 1:25-cv-00107-KES-SKO (HC), 2025 WL
6  1424382, at *5 (E.D. Cal. May 16, 2025) (recommending that "Respondent be ordered to
7  provide Petitioner with a bond hearing before an immigration judge at which Respondent must
8  justify Petitioner's continued detention by clear and convincing evidence" in § 1225(b) context);
9  <u>Sanchez-Rivera v. Matuszewski</u>, No. 22-cv-1357-MMA (JLB), 2023 WL 139801, at *7 n.5 (S.D.
10  Cal. Jan. 9, 2023) (following "an overwhelming majority of courts that have held that the
11  government must justify the continued confinement of a non-citizen detainee under § 1226(c) by
12  clear and convincing evidence that the non-citizen is a flight risk or a danger to the community").
13  In the event Petitioner is determined not to be a danger to the community and not to be so great a
14  flight risk as to require detention without bond, the IJ should consider Petitioner's financial
15  circumstances or alternative conditions of release. <u>See</u> <u>Hernandez</u>, 872 F.3d at 1000 ("Plaintiffs
16  are likely to succeed on their challenge under the Due Process Clause to the government's policy
17  of allowing ICE and IJs to set immigration bond amounts without considering the detainees'
18  financial circumstances or alternative conditions of release."); <u>Black</u>, 103 F.4th at 138 (The
19  district court "correctly directed the immigration judge ("IJ"), in setting his bond and
20  establishing appropriate terms for his potential release, to consider his ability to pay and
21  alternative means of assuring appearance.").

22                                  **III.**
23                         **RECOMMENDATION & ORDER**
24      Based on the foregoing, the undersigned HEREBY RECOMMENDS that:
25  1.  Respondent's motion to dismiss (ECF No. 16) be DENIED;
26  2.  The petition for writ of habeas corpus be GRANTED; and
27  3.  Respondent be ordered to provide Petitioner, within thirty days of the date of the order
28      adopting the findings and recommendations and granting the petition, with an

1  individualized bond hearing before an immigration judge that complies with the
2  requirements set forth in <u>Singh v. Holder</u>, 638 F.3d 1196 (9th Cir. 2011), at which

    a. "the government must prove by clear and convincing evidence that [Petitioner] is
       a flight risk or a danger to the community to justify denial of bond," <u>Singh</u>, 638
       F.3d at 1203; and

    b. the IJ should consider Petitioner's financial circumstances or alternative
       conditions of release in the event Petitioner is determined not to be a danger to the
       community and not to be so great a flight risk as to require detention without
       bond.

Further, the Clerk of Court is DIRECTED to:

1.  Randomly ASSIGN a District Court Judge to the present matter; and
2.  SUBSTITUTE Facility Administrator, Golden State Annex as Respondent in this matter.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within **fourteen (14) days** after service of the Findings and Recommendation, any party may file written objections, **no longer than fifteen (15) pages, including exhibits**, with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The assigned United States District Court Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 839 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:  __June 23, 2025__       /s/ _Erica P. Grosjean_
                                    UNITED STATES MAGISTRATE JUDGE